# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN CHANCE GREEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-15-454-SPS |

## OPINION AND ORDER

The claimant John Chance Green requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 20, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born September 16, 1966, and was forty-seven years old at the time of the administrative hearing (Tr. 112). He completed the twelfth grade, and has worked as a truck driver (Tr. 105, 114). The claimant alleges he has been unable to work since an amended onset date of October 2, 2012, due to amblyopia, injury to right knee, arthritis in the right leg, gout, and back problems (Tr. 91, 282).

### Procedural History

On October 5, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Bernard Porter held an administrative hearing and found that the claimant was not disabled in a written opinion dated September 9, 2014 (Tr. 89-107). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, that he could lift/carry/push/pull ten pounds occasionally and five pounds frequently, sit for up to six hours in an eight-hour workday, and stand/walk up to two hours per day, but that he required a sit/stand option which

allowed for a change of position at least every thirty minutes, defined as a brief positional change lasting no more than three to four minutes at a time. Additionally, the ALJ determined that the claimant could occasionally use hand controls, use right lower extremity for foot controls, climb ramps and stairs, and kneel; frequently handle, finger, feel, balance, stoop, and crawl; but that he could not climb ladders or scaffolds, nor could he crawl [the ALJ listed crawling twice]. Additionally, the ALJ found that the claimant was unable to read very small print, but could read ordinary newspaper or book-style print, that he should not work around unprotected heights or moving mechanical parts, and that he should avoid environments with temperature extremes. Finally, the ALJ limited the claimant to simple tasks and simple work-related decisions, having no more than occasional interaction with supervisors, co-workers, and the public, and that time off task would be accommodated by normal breaks (Tr. 94). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *e. g.*, document preparer, touch-up screener, and semi-conductor bonder (Tr. 105-106).

## Review

The claimant argues on appeal that the ALJ erred by failing to meet his step five burden when he failed to demonstrate the existence of work the claimant was capable of and failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational titles. The Court agrees with the claimant's contentions, and the Commissioner's decision must therefore be reversed and the case remanded for further proceedings.

4

At the administrative hearing, the ALJ elicited testimony from a VE to determine if the claimant could perform his past relevant work or if there were other jobs the claimant could perform with his limitations. He posed a number of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age, education, and work history of the claimant, who was

> limited to less than a full range of light work, with the ability to lift and carry 20 pounds occasionally, 10 pounds frequently, can sit for up to six hours, can stand up to six hours, and can walk up to six hours, can push and pull as much as they can lift and carry. They're limited to the occasional use of hand controls, and they're limited to the occasional use of their right lower extremity for foot control. They're also limited to frequent handling, fingering, and feeling, occasional climbing of . . . ramps and stairs, no climbing of ladders or scaffolds. They're also limited to frequent balancing, frequent stooping, occasional kneeling, frequent crouching, never crawling. Unable to read very small print, but could read ordinary newspaper or book style print. They should not work around unprotected heights and moving mechanical parts. They should avoid environments where there are temperature extremes. They're also limited to simple tasks and simple work-related decisions, and should have no more than occasional interaction with supervisors, coworkers, and the public. Time off task would be accommodated by normal breaks.

(Tr. 148). The VE testified that such an individual would not be able to perform his past relevant work, then identified three light, unskilled jobs such a person could perform: (i) small product assembler, DICOT § 706.684-022; (ii) conveyor line baker worker, DICOT § 524.687-022; and (iii) motel housekeeper, DICOT § 323.687-014 (Tr. 51-52). The next hypothetical posited an individual with all the same requirements as the first hypothetical, with the additional limitation of requiring a sit/stand option which allows for change of position at least every thirty minutes (Tr. 149). The VE testified that such a

5

person could perform the previously identified positions of small products assembler and conveyor line bakery worker, but she reduced the number of available jobs by 50%, and she eliminated the job of housekeeper (Tr. 149-150).  Finally, the ALJ proposed a hypothetical where the individual would be limited to sedentary work but otherwise adopted the two previous hypotheticals (Tr. 150).  The VE testified that such a person could still perform the sedentary, unskilled jobs of:  (i) document preparer, DICOT § 249.587-018; (ii) touch-up screener, DICOT § 726.684-110; and (iii) semi-conductor bonder, DICOT § 726.685-066 (Tr. 150-151).  Additionally, the ALJ elicited no testimony from the VE about whether any of the jobs she identified were consistent with the job descriptions contained in the Dictionary of Occupational Titles ("DOT") (Tr. 146-151).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from the third hypothetical posed to the VE (Tr. 94).  He then adopted the VE's testimony that the claimant could perform the sedentary jobs of document preparer, touch-up screener, and semi-conductor bonder (Tr. 106).  Furthermore, the ALJ specifically found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 106).

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The [ALJ] will explain in the determination or decision how he or she resolved the conflict.  The [ALJ] must explain the resolution of

the conflict *irrespective of how the conflict was identified*." 2000 WL 1898704, at *4 (Dec. 4, 2000) [emphasis added]. Although the ALJ made a finding that there was no conflict between the VE's testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability.").

The ALJ should undoubtedly have asked the VE whether there was any conflict between her testimony and the DOT before concluding that there was none, because "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4. The ALJ's failure to do this, however, would be harmless error if there were in fact no conflicts between the VE's testimony and the DOT, *see Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) ("Although we agree that the ALJ erred by not inquiring about whether there were any conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts."), but the error was not harmless here because there are conflicts that the ALJ should have resolved.

Here, a conflict exists with all three of the jobs identified by the VE, in relation to the claimant's visual impairment and the ALJ's assessed RFC. The DOT description for all two of the identified jobs requires *frequent* near acuity in vision, where "frequent" is defined as existing from 1/3 to 2/3 of the time. *See* DICOT §§ 249.587-018 (document prepaper), 726.685-066 (semi-conductor bonder). Additionally, the third job identified, touch-up screener, requires *constant* near acuity in vision, where "constant" is defined as existing 2/3 or more of the time. *See* DICOT § 726.684-110. Moreover, the job of semi-conductor bonder also requires frequent depth perception and accommodation. *See* DICOT § 726.685-066. The claimant contends that the ALJ's RFC finding that the claimant was "unable to read very small print, but can read ordinary newspaper or book-style print" is incompatible with these requirements of frequent or constant near visual acuity because the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* defines "near acuity" as "clarity of vision at 20 inches or less." App. C., No. 15. Additionally, the job of document preparer requires an individual, as part of their duties, to "[r]eproduce[] document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size[.]" DICOT § 249.687-018. The job of touch-up screener requires an individual to "inspect[] printed circuit board assemblies for defects, such as missing or damaged components, loose connections, or defective solder [using a] magnification lamp[.]" DICOT § 726.684-110. Finally, the semi-conductor bonder position requires an individual to "observe[] package, using microscope or equipment display screen, to ensure connections to be bonded are aligned with bonding wire." DICOT § 726.685-066.

8

The Court agrees that these requirements raise numerous questions regarding the claimant's ability to actually perform the jobs identified. Given the disparity of vision in the Plaintiff's eyes and the documented loss of vision in one eye that requires the other eye to compensate, the claimant may not be able to perform these job, and it is not clear that they conform to the claimant's RFC. As noted above, in this circuit "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091.

Here, the ALJ did nothing to resolve the apparent conflicts between the VE's testimony and the DOT, and was therefore not entitled to rely on the VE's testimony as substantial evidence. Accordingly, the Commissioner's decision must be reversed and the case remanded for further proceedings. On remand, the ALJ should resolve any conflicts between the VE's testimony and the DOT and determine what impact, if any, such resolution has on the issue of the claimant's disability.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 22nd day of March, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**